UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDWARD TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00306-JMS-MJD |
| | ) | |
| ALLTRAN FINANCIAL, LP, | ) | |
| LVNV FUNDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **ENTRY**

Plaintiff Edward Taylor alleges that Defendants sent him and over 200 others a form debt collection letter which failed to effectively identify the current creditor, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq*. Mr. Taylor now seeks to certify a class consisting of everyone who received the same form letter from February 1, 2017, to the present. [Filing No. 32.] Defendants oppose class certification, arguing that Mr. Taylor has failed to satisfy the requirements set forth in Federal Rule of Civil Procedure 23. But Defendants ultimately demand far more of Mr. Taylor than is required by Rule 23. For the reasons described below, the Court **GRANTS** Mr. Taylor's Motion.

### I.
#### BACKGROUND

This lawsuit arises out of a dunning letter, dated December 12, 2017, that Mr. Taylor received from Defendant Alltran Financial, LP ("Alltran"). [Filing No. 33-1.] In relevant part, the letter provided as follows:

> **Alltran Financial, LP**
> P.O. BOX 610, SAUK RAPIDS, MN 56379
>
> TOLL FREE#: 866-648-8591
> Incoming Calls Answered: Mon-Tues - 8am-8pm, Wed - 8am-6pm
> Thur-Fri - 8am-7pm, Sat - 8am-12pm
> www.Alltransecurepay.com
>
> 12/12/17
>
> Alltran Financial, LP File #:
> Original Account Number: XXXX7356
> Original Creditor: Springleaf Financial Services Inc.
> Current Creditor: LVNV Funding LLC
> Total Due: $4,867.03
>
> **NOTICE OF JUDGMENT COLLECTION**
>
> Dear Edward A Taylor,
> Alltran Financial, LP has been contracted to lead and represent in the collection of the judgment awarded on your Springleaf Financial Services Inc. account. This judgment was awarded on 05/05/2010 and holds a current balance of $4,867.03.

[Filing No. 33-1 at 1.] Three features from this letter are relevant to Mr. Taylor's lawsuit. The letter listed as the "Original Creditor" nonparty Springleaf Financial Services Inc., [Filing No. 33-1 at 1], from whom Mr. Taylor had previously borrowed money, [*see* Filing No. 1 at 3.] Next, the letter stated that the "Current Creditor" was Defendant LVNV Funding, LLC ("LVNV"). [Filing No. 33-1 at 1.] Finally, below this information, the letter explained that "Alltran Financial, LP has been contracted to lead and represent in the collection of the judgment awarded on your Springleaf Financial Services Inc. account." [Filing No. 33-1 at 1.] Approximately 200 consumers received form dunning letters identical to the one sent to Mr. Taylor. [Filing No. 42-1 at 3 (identifying class of 218 individuals); Filing No. 33-2 at 20 (identifying class of 216 individuals).]

On February 1, 2018, Mr. Taylor brought suit on behalf of himself and others who received the same dunning letter, alleging that the letter he received from Defendants failed to effectively identify the current creditor, in violation of the FDCPA. [Filing No. 1.] On June 1, 2018, Mr. Taylor filed his Motion for Class Certification. [Filing No. 32.] Mr. Taylor's Motion is fully briefed, and the issue of class certification is ripe for determination.

**II.**
**DISCUSSION**

Mr. Taylor seeks to certify the following class:

[A]ll persons similarly situated in the State of Indiana from whom Defendants attempted to collect a defaulted consumer debt allegedly owed for a Springleaf Financial Services account, via the same form collection letter that Defendants sent to Plaintiff, from one year before the date of this Complaint [February 1, 2017] to the present.

[Filing No. 32 at 4 (docket citation omitted).] In support, Mr. Taylor argues that this case satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3), such that resolution of his claim on a class-wide basis is appropriate. [Filing No. 33.]

Class actions serve an important purpose in modern civil litigation. As the Seventh Circuit has explained:

The class action is an ingenious procedural innovation that enables persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the same defendant or defendants to be feasible, to obtain relief as a group, a class as it is called. The device is especially important when each claim is too small to justify the expense of a separate suit, so that without a class action there would be no relief, however meritorious the claims.

*Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014). In order to maintain a class action, the proponent must satisfy the requirements of Rule 23. In evaluating whether a class should be certified, the Court may not merely accept as true the allegations of the complaint, but instead must "make whatever factual and legal inquiries are necessary" to resolve contested issues. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). First, the named plaintiff must demonstrate that the putative class satisfies all four prerequisites set forth in Rule 23(a):

[A member of a class may sue] on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

In addition to the four Rule 23(a) prerequisites, a plaintiff must also demonstrate that the lawsuit satisfies the requirements of one of the three types of class actions listed in Rule 23(b). Here, Mr. Taylor argues that this case satisfies Rule 23(b)(3), which provides as follows:

> [The plaintiff may maintain a class action if] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Therefore, Rule 23(b)(3) imposes two additional requirements for class certification: 1) class-wide factual or legal issues must predominate over individual issues, and 2) the class action mechanism must provide a superior method for adjudication.

Mr. Taylor argues that he has made the showing required by Rule 12(a) and (b)(3). In response, Defendants challenge the adequacy of Mr. Taylor's class representation, the adequacy of Mr. Taylor's counsel's representation, the typicality and commonality of the class's claims, the predominance of class issues, and the superiority of the class action. The Court addresses each of these arguments as relevant below.

### A. Numerosity

First, Rule 23(a) requires that the class must be "so numerous that joinder of all members is impracticable." [Fed. R. Civ. P. 23(a)(1)](). Mr. Taylor has demonstrated, based upon Defendants' discovery response, that over 200 consumers meet the proposed class definition. Defendants do not contest that this satisfies the numerosity requirement of Rule 23(a), and the Court finds that it does. Joinder of all 200-plus individuals who received the letter sent to Mr. Taylor would be unworkable and inefficient. Mr. Taylor has established numerosity.

### B. Commonality & Typicality

Next, Mr. Taylor must make two, overlapping showings: that there are common issues of fact or law, and that his claim is typical of the class. Mr. Taylor points to the common issues of whether the letter the class received violates the FDCPA and the appropriateness of the relief. [[Filing No. 33 at 6]().] Similarly, Mr. Taylor argues that his claim is typical of the class claims because all allege FDCPA claims arising out of the same form dunning letter. [[Filing No. 33 at 6-7]().]

In response, Defendants argue that the Mr. Taylor has failed to establish commonality and typicality because the Court would have to review the loan files to determine whether the loans were for "personal, family, or household use," which are covered by the FDCPA, or whether they were "for business or investment purposes," which are not. [[Filing No. 45 at 6]().] This, Defendants argue, "necessitate[s] highly individualized inquiries." [[Filing No. 45 at 6]().]

In reply, Mr. Taylor argues that Defendants' factual premise is incorrect because, by definition, Defendants' discovery response indicated that the letters were sent to individuals with consumer debts. [[Filing No. 52 at 7-9]().] Mr. Taylor also argues that the original creditor,

5

Springleaf, provides personal loans only and does not provide commercial loans, citing to Springleaf's (now known as One Main Financial) website. [Filing No. 52 at 8-9.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and the plaintiff's claims must be "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Commonality of fact is satisfied when there is a "common nucleus of operative fact," that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018, (7th Cir. 1992) (citation omitted). Commonality of law is satisfied as long as the class claims have their roots in the same legal or remedial theory. *In re Ready–Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). All questions of fact or law need not be identical to satisfy Rule 23(a)(2). *Id.* The typicality requirement in Rule 23(a)(3) "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large," and may be satisfied even where there are factual distinctions between the claims of the named plaintiffs and other class members. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir.2009) (citation omitted).

Here, Defendants' argument that the proposed class could contain individuals who received commercial or business loans, and who would therefore be ineligible under the FDCPA, makes no sense. Even were Defendants correct in their assertions that the proposed class is overbroad (and they are not), the appropriate course of action would be to craft a class definition so as to exclude

6

ineligible individuals who owed debts for commercial or business purposes.  But there is no such problem in this case because the proposed class consists only of persons "from whom Defendants attempted to collect a defaulted *consumer debt*."  [Filing No. 32 at 4 (emphasis added).]  Perhaps Defendants are sidetracked by the FDCPA's isolated definitions of the terms "consumer" and "debt."  *See* 15 U.S.C. § 1692a(3)-(4).  But the relevant term—"consumer debt"—is not defined in the FDCPA, and both the common and legal definitions of consumer debt are restricted to "debt incurred by an individual for a personal, family, or household purpose."  Debt, Black's Law Dictionary (10th ed. 2014); *see, e.g.*, Merriam-Webster, Consumer Debt, (Aug. 18, 2018), https://www.merriam-webster.com/dictionary/consumer%20debt (defining consumer debt as "a debt from buying something at a store").  Defendants specifically represented, in their discovery response, that there were 218 individuals who "fall within the class definition alleged in the Complaint," [Filing No. 42-1 at 3]—meaning that these individuals received the same letter sent to Mr. Taylor to collect on a consumer debt.  Defendants may neither ignore the plain meaning of the term consumer debt nor disavow this discovery response in an effort to muddle up an otherwise straightforward class of individuals who had debts arising from loans for a "personal, family, or household purpose."  In sum, the proposed class, as currently defined, clearly excludes individuals with business or commercial loans, obviating the concern expressed by Defendants.

Having dispatched with Defendants' sole, unavailing argument, the Court finds that Mr. Taylor meets both the commonality and typicality requirements.  There are common issues of both fact and law as to the class, as the sole issue presented is whether the form letters received by the class members violates the FDCPA by ineffectively identifying the current creditor.  Mr. Taylor's claim is typical of the class claims, inasmuch as Defendants' discovery response demonstrates that

the class all received the same, allegedly-deficient form dunning letters. Mr. Taylor has satisfied Rule 23(a)(2) and (3).

### C. Adequacy of Representation

The final requirement of Rule 23(a) is that the plaintiff must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Mr. Taylor argues that he and his counsel satisfy this requirement because Mr. Taylor's interests are aligned with those of the class, because he has a sufficient personal stake in the outcome of the case to vigorously pursue the matter, and because his counsel has substantial experience litigating FDCPA class actions. [Filing No. 33 at 7-8.]

In response, Defendants argue that Mr. Taylor is an inadequate class representative because he has not introduced evidence showing that he has been actively involved in this case. [Filing No. 45 at 7.] Defendants also argue that Mr. Taylor's counsel is inadequate because they previously lost a similar matter, *Zuniga v. Asset Recovery Solutions*, 2018 WL 1519162 (N.D. Ill. 2018), on a motion to dismiss. [Filing No. 45 at 8.]

In reply, Mr. Taylor argues that he is an adequate class representative who has participated fully in the case thus far and that his counsel are adequate in light of their FDCPA litigation record. [Filing No. 52 at 5-6.] Mr. Taylor distinguishes *Zuniga* from this case and points out that the plaintiff in that matter appealed from the decision and settled the lawsuit while it was pending on appeal. [Filing No. 52 at 6.]

The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted). To adequately represent the class,

8

the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation and quotation marks omitted). The Seventh Circuit has described the responsibility of class representatives as follows:

> The named plaintiffs are the representatives of the class—fiduciaries of its members—and therefore charged with monitoring the lawyers who prosecute the case on behalf of the class (class counsel). They receive modest compensation, in addition to their damages as class members, for their normally quite limited services—often little more than sitting for a deposition—as class representatives.

*Eubank*, 753 F.3d at 719.

Mr. Taylor has sufficiently demonstrated that his interests are aligned with the class. He suffered the same alleged injury as the class (receiving the dunning letter) and seeks relief for himself that would benefit the class (damages under the FDCPA). Defendants suggest that he will not vigorously pursue this litigation and that he will not check his attorneys' discretion. By demonstrating that Mr. Taylor is willing to participate in this case and has interests aligned with those of the class, Mr. Taylor has met his burden to show that he will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In an effort to rebut this showing, Defendants offer nothing but speculation to suggest that Mr. Taylor will not act in accordance with those interests and provide the "normally quite limited services" expected of a class representative. *Eubank*, 753 F.3d at 719. Mr. Taylor has demonstrated that he is a sufficient class representative.

Turning to the adequacy of Mr. Taylor's counsel, Rule 23(g)(1) directs the Court to consider many factors, including

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

9

Fed. R. Civ. P. 23(g)(1)(B).

As demonstrated by Mr. Taylor's counsel's affidavit, his attorneys have ample experience and success in FDCPA litigation. [Filing No. 33-2 at 1-20.] Defendants' efforts to paint Mr. Taylor's counsel as insufficient on the basis of one unsuccessful case are utterly unavailing, particularly in light of the fact that they pursued an appeal and (per counsel's representation) then achieved some measure of success for their client by mediating a settlement. Moreover, Defendants have not argued that the plaintiff's lack of success in *Zuniga* may be attributable to some shortcoming of counsel, such as a deficient brief or missed deadline. Rather, the result appears, as is usually the case in civil litigation, to be the product of a judicial decision rendered following the parties' participation in the adversarial process. In short, Mr. Taylor's attorneys, with decades of collective experience in FDCPA and class action litigation, plainly qualify as adequate class representatives for this case. Therefore, the Court concludes that Mr. Taylor satisfies all four class action prerequisites identified in Rule 23(a): numerosity, commonality, typicality, and adequacy.

**D. Predominance & Superiority of the Class Action**

The fact that this case satisfies the Rule 23(a) prerequisites does not end the Court's inquiry. Mr. Taylor must also satisfy one of the three categories set forth in Rule 23(b). As explained above, Mr. Taylor argues that his action qualifies under Rule 23(b)(3), which requires that the plaintiff demonstrate that common issues of fact or law predominate over individual questions and that the class action device is superior to other methods of adjudication. Mr. Taylor argues that class issues predominate because liability turns on the same form dunning letter sent to all class members. [Filing No. 33 at 8.] Finally, Mr. Taylor argues that the class action device is superior because it ensures that class members, who may otherwise be unaware of their rights, may have
10

their rights vindicated; there is no other lawsuit pending regarding this particular letter; it is more efficient to address the legality of the dunning letter in one suit instead of in many; and proceeding as a class action would present no particular case management problems. [Filing No. 33 at 8-9.]

In response, Defendants reiterate their argument that class treatment is inappropriate because of the need to conduct an individual evaluation to ensure that each class member's loans were for "personal, family, or household use." [Filing No. 45 at 9.] Next, Defendants argue that the class action device is not superior because "plaintiff seeks only statutory damages and no actual harm or damages," because of the potential that Mr. Taylor's counsel may bring additional lawsuits based upon similar facts outside of the class definition to circumvent the statutory damages cap for class actions, and because individual plaintiffs have the incentive of attorney's fees to bring individual actions. [Filing No. 45 at 10-11.]

In reply, Mr. Taylor argues that Defendants' arguments lack a foundation in law or fact. [Filing No. 52 at 4-6.]

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 803 (7th Cir. 2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "[I]t is not bean counting," and "common issues need only predominate, not outnumber individual issues." *Id.* (internal quotation omitted). In evaluating both predominance and the superiority of a class action, Rule 23(b)(3) instructs the Court to consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

First, the Court rejects Defendants' repurposed arguments regarding the possibility that the class may include individuals who received loans for business or commercial purposes. As explained above, any reasonable reading of the class definition, which is limited to individuals to whom Defendants sent letters to collect "consumer debt," would exclude business or commercial debts.

Next, Defendants' argument that Mr. Taylor's counsel may attempt to circumvent the statutory cap on class action damages is wholly without support. Defendants question why the proposed class definition is limited only to collection letters sent to individuals for whom Springleaf was the original creditor. But, as the Seventh Circuit explained in an FDCPA case reversing the denial of class certification, there is "no authority requiring the participation of the broadest possible class." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). Of course Defendants, in the alternative to their opposition to Mr. Taylor's Motion to Certify, could have cross-moved for class certification and proposed any class definition they wished, including a broader class definition than that proposed by Mr. Taylor; nothing in Rule 23 limits motions to certify to plaintiffs. And if Defendants believed that additional lawsuits were in the offing, it was incumbent upon them to offer evidence of such instead of asking the Court to speculate that some plaintiff may be preparing to sue Alltran or LVNV in another lawsuit based upon the same form letters. Nothing in Rule 23 requires Mr. Taylor to negate that possibility, and a court may address the consequences of serial class actions should the issue present itself in the future. *See id.* at 344 ("[T]here is, of course, no way of telling whether such repeated class actions are possible or likely . . . . In any event, the case before us does not now present multiple or serial class actions to recover for the same misconduct.").

Finally, Defendants assert that the availability of attorney's fees makes class certification unnecessary. "But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case." *Id.* The fact that there may be some incentive for individual class members to independently pursue claims has no bearing on the appropriateness of the class action. Given the identical issues presented by each class member's clam, there is no reason that each class member should have to find counsel and file individual lawsuits.

As Mr. Taylor explains, each class member's claim presents an identical issue of law under the FDCPA. Class issues therefore predominate over any individual issues. Finally, a class action is superior to individual lawsuits due to the large number (over 200) of potential plaintiffs, the relatively small statutory damages at issue, and the easy management of the class in this case. Accordingly, in addition to satisfying the prerequisites in Rule 23(a), Mr. Taylor has also satisfied the requirements of Rule 23(b)(3), making class certification appropriate.

### III.
### CONCLUSION

For the foregoing reasons, the Court finds that Mr. Taylor has met the requirements of Rule 23(a) and (b)(3) and that class certification is appropriate in this case. The Court therefore **GRANTS** Mr. Taylor's Motion for Class Certification. [32] Specifically, the Court certifies the following class:

> All persons similarly situated in the State of Indiana from whom Defendants attempted to collect a defaulted consumer debt allegedly owed for a Springleaf Financial Services account, via the same form collection letter that Defendants sent to Plaintiff, from February 1, 2017 to the present.

Finally, the Court appoints Mr. Taylor's current attorneys as class counsel.

Date: 9/17/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**